501 So.2d 920 (1987)
STATE of Louisiana, Appellee,
v.
Elmer O'NEAL, Jr. Appellant.
No. 18235-KA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*922 John Milkovich, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Gay Caldwell and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, FRED W. JONES, JR. and NORRIS, JJ.
NORRIS, Judge.
Defendant, Elmer "Fuzzy" O'Neal, was charged by bill of information with possession of cocaine with intent to distribute, in violation of LSA-R.S. 40:967 A. Following a trial, the 12-member jury unanimously found defendant guilty as charged. The trial judge sentenced him to seven years imprisonment at hard labor. With new counsel, defendant now appeals, urging eleven of his original thirteen assignments of error as grounds for reversal.[1] After thoroughly reviewing defendant's contentions, we conclude that the assignments of error advanced do not warrant reversal of his conviction and sentence.

FACTUAL BACKGROUND
On June 11, 1985, Sgt. Billy Golden of the Caddo Parish Sheriff's Office, Narcotics Division, came into contact with a confidential informant who gave him information about a narcotics operation located within the city limits of Shreveport. Sgt. Golden referred the informant and the information to agent Mark Holley of the Narcotics Division of the Shreveport Police Department. Holley had the confidential informant fitted with an electronic transmitting device and also furnished her with *923 $50 in marked money[2] with which to make a drug buy. The plan was for the confidential informant to proceed to the Castle Hotel on Sprague Street in Shreveport, Louisiana, where she was to contact Elmer O'Neal, Jr. and purchase cocaine from him. With police narcotics agents in surveillance, the confidential informant entered the hotel. Agent Holley and Agent Jack Miller were stationed in a vehicle equipped with a receiving device to monitor the transmissions from the confidential informant's bug. Holley and Miller heard the informant walk into the hotel and greet a female and male subject. The male was addressed as "Fuzzy." At least one of the officers knew the defendant prior to this incident and knew he went by the nickname "Fuzzy." The informant talked to "Fuzzy" and asked him if he had any cocaine. Fuzzy said yes and told the informant, in response to her query about the quality of the drug, that it was as good as what she had received a couple of days ago. Upon hearing this, Holley gave the signal for the officers to move in. Holley, Miller, Golden and agent Steve Floyd all ultimately entered room 105 where the purchase had been negotiated. The door was open and the officers stepped in and identified themselves. A black female, Lorean Clay, was seated on the bed. The confidential informant was also present in the room with Clay. The bathroom door was closed.
The officers opened the bathroom door and found the defendant nude and seated on the commode. When they ordered O'Neal to raise his hands the officers observed a large wad of money in his right hand. The money was confiscated and amounted to $1700 and included the $50 in marked money that had been given to the confidential informant to make the buy.[3]
The officers observed in plain view in the bathroom a plastic bag containing two marijuana cigarettes, another plastic bag containing seven tinfoil packages of marijuana, a .32 caliber revolver, and a notebook with loose cocaine and a playing card lying in a chair beside the commode.[4] A glass tube with a metal rod containing a residue of phenmetrazine, two syringes and a cup of water were found on the back of the commode.
In the main portion of the hotel room, the officers found two more tinfoil packages of cocaine. One was located under the television remote control and the other was found on the top of the dresser where the confidential informant had been instructed to leave any drugs she purchased. In a dresser drawer, the officers found two marijuana cigarettes, a small packet of loose marijuana and some rolling papers. One of the officers looked out the bathroom window and observed a paper sack that contained several syringes of the same type as was found in the bathroom. Also found in the room was a package of headache powder, possibly used as a cutting agent for the cocaine. All of these items were seized and tagged and ultimately introduced into evidence at defendant's trial.
The officers also observed men's clothing scattered around the room, a pair of men's boots in the closet and men's underwear in the dresser drawers.
Following the arrest, defendant and Lorean Clay were billed for possession of cocaine with intent to distribute. Lorean Clay pled guilty and was sentenced.

ASSIGNMENT OF ERROR NO. 2
Here, defendant argues that the trial court erred by overruling defendant's objection *924 to the testimony of Officer Jack Miller as to the contents of the conversation between the confidential informant and defendant which he heard transmitted by the device with which the informant was wired. The objection at trial was lack of proper foundation. On appeal, defendant contends that the best evidence rule was violated because the tape of the conversation, not the officer's testimony as to what he heard, constituted the best evidence; and that the statement was hearsay.
A new basis for an objection cannot be raised for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Cressy, 440 So.2d 141 (La.1983). Defendant cannot now complain on the basis of the best evidence rule and hearsay since he failed to object on those grounds at trial.
Moreover, the best evidence and hearsay objections are without merit. Both officers Holley and Miller testified that no tape was made of the conversation because they had inserted a defective tape by mistake into the tape recorder. Since there was no tape of the conversation, the officers' testimony was the best evidence. Thus, the officers could testify as to their recollection of the conversation transmitted at the scene and the jury could assign the appropriate evidentiary weight to such testimony.
Regarding the hearsay argument, LSA-R.S. 15:447 provides that those things forming part of the res gestae of an offense are always admissible. The res gestae doctrine includes not only spontaneous utterances and declarations made before and after commission of a crime but also includes the testimony of witnesses pertaining to what they heard before, during and after the commission of the crime, if the continuous chain of events is evident under the circumstances. State v. Brown, 395 So.2d 1301 (La.1981). The conversation complained of by this assignment of error clearly forms a part of the res gestae. Therefore, the officers' testimony as to what they heard during this exchange was clearly admissible as an exception to the hearsay rule.
This assignment of error does not warrant reversal.

ASSIGNMENT OF ERROR NO. 3
By this assignment, defendant contends that the trial court erred in failing to make the state divulge the identity of the confidential informant.
The request for the identity of the confidential informant arose only at the preliminary hearing during the cross-examination of the state's witness, Officer Holley. After defense counsel had finished his cross-examination, he asked defendant if he wanted to ask any other questions. The defendant said he wanted to know who the confidential informant was. The state objected, the trial court sustained the objection and defendant remarked, "[I]f he's telling me about Mona, I have had dates with her before. I paid her cash money." Neither defense counsel nor defendant objected to the court's ruling denying the request for the identity of the informant. The defense made no other request, written or otherwise, to obtain the identity of the confidential informant.
As a general rule, the state is permitted to withhold the identity of an informer from the accused. The informer privilege is founded upon public policy and seeks to advance the public interest in effective law enforcement. The United States and the Louisiana Supreme Courts have recognized exceptions to the general rule but only in exceptional circumstances. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. James, 396 So.2d 1281 (La.1981). There is a heavy burden on the defendant to make a showing of exceptional circumstances warranting disclosure and the trial court is allowed much discretion in finding whether this burden has been met. State v. Davis, 411 So.2d 434 (La.1982).
In the instant case, there was no argument made or cogent reason advanced by the defense at the preliminary hearing *925 as to why the name of the informant was required. Absent any showing whatsoever as to why the informant's identity ought to be revealed, the trial court committed no error in refusing to order the revelation of the informer's identity at the preliminary hearing. State v. De la Beckwith, 344 So.2d 360 (La.1977); State v. Williams, 347 So.2d 184 (La.1977); State v. Edwards, 351 So.2d 500 (La.1977). No other request was ever made. Furthermore, this issue may well be "much ado about nothing" since the record strongly suggests, and defense counsel admitted in closing argument, that the defendant and Lorean Clay were well acquainted with the informant. Therefore had the informant's testimony in any way aided defendant, she could have been called by him as a witness. State v. James, supra.
Finally, the defense did not object to the trial court's ruling sustaining the state's objection to revealing the informant's identity. Defendant, therefore, apparently acquiesced in the court's ruling. Thus, the alleged error cannot be urged for the first time on appeal. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. The party aggrieved should, at the time the ruling is made, make known to the court his objection and the grounds therefor. LSA-C.Cr.P. art. 841; State v. Klein, 351 So.2d 1158 (La.1977); State v. Elizey, 407 So.2d 1204 (La.1981); State v. Simmons, 422 So.2d 138 (La.1982).

ASSIGNMENTS OF ERROR NOS. 4 and 5
These assignments have been combined for argument by defendant. In these assignments, the defendant complains that the trial judge erred in failing to recuse himself because he became a material witness in the case. Secondly, the defendant contends the trial judge erred in divulging to the prosecution the contents of a letter written by former co-defendant, Lorean Clay, to him.
Lorean Clay was charged in a joint bill of information with the defendant for the instant offense. Subsequently, Ms. Clay pled guilty pursuant to a plea bargain and had been sentenced at the time of defendant's trial. She testified as a defense witness at the trial. During cross-examination, she admitted she had written letters to the judge regarding her offense and sentence and identified a letter she had written to Judge Victory, who presided at her sentencing as well as at defendant's trial. Clay acknowledged that in the letter dated July 25, 1985, she denied guilt with respect to the crime for which she was jointly charged with defendant. This testimony was elicited by the prosecution in an attempt to impeach Clay's prior direct testimony that the drugs found in the room belonged solely to her.
The defendant argues that it is apparent from the record that the trial judge, during the trial, turned over to the prosecutor the letter written to him by Lorean Clay. Consequently, he argues that the judge became a material witness for the prosecutor as a result of this action and should have recused himself under the provisions of LSA-C.Cr.P. art. 671, which provides that in a criminal case, a judge shall be recused when he is a material witness in the cause.
Concerning the testimony about the letter, we note that there was no defense objection to the introduction of this testimony or to the reference to the letter. Appellate counsel argues, however, that although there is no objection on the record, the record reflects that an "off the record" bench conference was held which, because of the circumstances contained in the record, necessarily dealt with the propriety of the use of the letter or testimony relating to it. However, our review of the record does not convince us that such a conclusion is evident. Appellant's argument on appeal is simply speculation as to what happened. The record reveals that the prosecutor stated on the record that she needed to retrieve a document in order to continue with the trial. The trial court requested that counsel approach the bench. Following a discussion off the record, the trial judge called for a recess stating that *926 the court and the attorneys needed to review jury charges and the trial would resume at 1:30 p.m. When the trial resumed, the prosecutor had the letter complained of. That the letter, its use or admissibility, or any testimony relative thereto, was discussed at the bench conference is not a necessary inference from the circumstances contained in the record. It is indeed plausible that the prosecution gained access to the letter as a result of the sentencing proceeding involving Ms. Clay.
The trial judge did not become a material witness in the case. Lorean Clay admitted writing the letter referred to in her cross-examination. Moreover, the defense did not object to use of the letter (which was not introduced into evidence) or to the testimony elicited regarding the letter. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. LSA-C.Cr.P. art. 841; State v. Klein, supra; State v. Elizey, supra; State v. Simmons, supra.
These assignments of error do not warrant reversal.

ASSIGNMENT OF ERROR NO. 6
Defendant, in this assignment, asserts that the trial court erred in allowing the testimony of Paul Schlidt, Lorean Clay's probation officer. Schlidt testified that he had prepared a pre-sentence investigation for Lorean Clay. During his interview with Ms. Clay at the detention center, he testified she told him that approximately two months prior to her arrest at the Castle Hotel, she moved in with Elmer O'Neal. According to Mr. Schlidt's testimony, Ms. Clay told him that she lived there with O'Neal because he provided her with a ready supply of drugs which were coming in and out of the apartment.
Defense counsel objected prior to this testimony, arguing that the probation officer's testimony would be confidential. On appeal, defendant now asserts that an improper foundation for this prior inconsistent statement was established. Having failed to articulate this basis for the objection at the trial court level, the defendant is precluded from asserting it on appeal. See State v. Cressy, supra.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 8 and 10
In these assignments, defendant complains that the trial court erred by admitting other crimes evidence at the trial. Specifically, defendant complains that evidence of a prior sale of cocaine to the confidential informant was admitted through the testimony of Officer Miller without Prieur notice[5] and that testimonial and physical evidence of possession of marijuana and phenmetrazine were admitted.
The evidence complained of, both testimonial and physical, was admitted without objection from the defense. An irregularity or error cannot be complained of after verdict unless it was objected to at the time of the occurrence. LSA-C.Cr.P. art. 841; State v. Klein, supra; State v. Elizey, supra; State v. Simmons, supra.
Notwithstanding the lack of defense objection, LSA-R.S. 15:447 provides that any part of the res gestae is always admissible in evidence. LSA-R.S. 15:448 states that in order to constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants, or form in conjunction with it one continuous transaction.
The articles introduced into evidence were seized at the time of defendant's arrest for the crime of possession of cocaine with intent to distribute. The physical and testimonial evidence pertaining to possession of marijuana and phenmetrazine are concomitant offenses and thus a part of the res gestae. The testimony of agent Miller as to the conversation he heard between "Fuzzy" and the confidential informant immediately before the police entered *927 the room is also clearly part of the res gestae. State v. Brown, supra.
The general rule against introducing evidence of other crimes does not prohibit the state from introducing into evidence criminal acts which are part of the res gestae and therefore admissible. State v. Brown, 428 So.2d 438 (La.1983). No notice of intent to use other crimes evidence is required as to evidence of offenses which are part of the res gestae. State v. Goza, 408 So.2d 1349 (La.1982). Moreover, the state filed a notice of intent to use res gestae crimes at trial prior to defendant's trial.
These assignments of error do not warrant reversal.

ASSIGNMENT OF ERROR NO. 9
By this assignment of error, the defendant asserts that the trial court erred by allowing the state to carry its rebuttal argument beyond the scope of the defense's closing argument. Appellant contends that the state's reference to the large amount of money found in defendant's hand when he was arrested and the argument that defendant got the money from drug transactions exceeded the scope of proper rebuttal and also amounted to an improper reference to other crimes.
LSA-C.Cr.P. art. 774 calls for argument to be confined to evidence submitted, the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The state's rebuttal is to be confined to answering the defendant's argument.
In his closing argument, defense counsel strenuously contended that the state had failed to prove beyond a reasonable doubt the elements of the offense of possession of cocaine with intent to distribute. The defense also argued that the testimony of the defendant and Lorean Clay was credible and should be believed and that defendant had not dealt in drugs since 1972. He finally told the jurors that they would have to decide if defendant "was selling drugs."
In rebuttal, the state countered that all the elements were proved beyond a reasonable doubt and that the testimony of the defendant and Lorean Clay was unworthy of belief. In its argument, the state did on one occasion refer to the "money" and argued that defendant did not win the money gambling but got it making drug transactions.
Defense counsel's argument touched on every aspect of the case. The state's rebuttal was entitled to similar scope. State v. Williams, 353 So.2d 1299 (La.1978). We are satisfied that the rebuttal argument referring to the money was a reasonable and logical conclusion of fact to be drawn from the evidence. It was relevant to reply to the defense argument that specific intent to distribute had not been proved beyond a reasonable doubt, that the defense witnesses should be believed, and that defendant had not dealt in drugs since 1972. The argument also informed the jury how the state thought it ought to decide the issue put to it by the defense as to whether or not defendant was "selling drugs."
There are exceptions to the "other crimes" prohibition. One exception is if the evidence is substantially relevant to some purpose other than to show that the accused is a bad person. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1986). Here, the large sum of money, which contained the marked money used in the drug transaction with the informant, was certainly relevant to show that the defendant possessed cocaine with intent to distribute.
Assuming, but not holding, that the argument was improper, the verdict will not be set aside unless we are thoroughly convinced that the jury was influenced by the remark and that it contributed to the verdict. State v. Sheppard, 350 So.2d 615 (La.1977). We are not convinced that the statement by the prosecutor that defendant got the money from drug transactions in any way contributed to the guilty verdict or deprived defendant of a fair trial.
*928 This is certainly true in light of the defense argument that the jury had to decide this very issue. See State v. Sheppard, supra, where reference by the prosecutor in rebuttal argument to an arrest that occurred several weeks after the offense did not warrant reversal. See also, State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
Moreover, the record reflects that defense counsel made no objection to the state's rebuttal argument at trial. As such, the alleged error cannot be urged for the first time on appeal. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. art. 841; State v. Klein, supra; State v. Elizey, supra; State v. Simmons, supra.
This assignment of error does not warrant reversal.

ASSIGNMENTS OF ERROR NOS. 7 and 11
In these related assignments of error, the defendant asserts that the trial court erred in failing to appoint new counsel prior to the preliminary hearing and that he was deprived of the effective assistance of counsel.
The record reveals that at the preliminary examination stage of the prosecution, the defendant expressed dissatisfaction with his court appointed attorney. The defendant specifically complained that defense counsel had not been to see him since he was appointed but had written him about a plea bargain. Defendant stated he desired new counsel. Defense counsel at the trial level, Donald Miller, stated to the court that he had seen defendant in the jail on July 18, 1985, and defendant had furnished defense counsel with his address, phone number, marital history, educational history, prior criminal history, names of relatives, and information about the charge. Defense counsel also stated to the court that he had obtained information regarding the co-defendant's preliminary examination which he had related to defendant and had received telephone calls from defendant's relatives. Thereafter, defendant to some degree changed his position and stated that he had seen defense counsel on the day counsel was appointed. Based on this showing, the court refused to appoint new counsel.
The court cannot be called upon to appoint other counsel than the one originally appointed merely to please the desires of the indigent accused, in the absence of an adequate showing that the court appointed attorney is inept or incompetent to represent the accused. State v. White, 256 La. 36, 235 So.2d 84 (1970); State v. Austin, 258 La. 273, 246 So.2d 12 (1971); State v. Holmes, 460 So.2d 1091 (La.App. 2d Cir. 1984). Here, the showing made was inadequate to warrant appointment of new counsel and the lower court did not abuse its discretion in refusing to appoint defendant another attorney at the time the request was made.
Defendant additionally argues that he received ineffective assistance of counsel at the trial court level. He points to numerous alleged failures: to consult with defendant to formulate strategy, to file a motion to suppress the physical evidence, to file any other pre-trial motions, to object to certain prejudicial evidence, to move for recusal of the trial judge, to independently investigate the facts, to subpoena certain witnesses, and to observe defendant's appellate rights, as evidence of ineffective assistance.
We note ineffective assistance of counsel is more properly raised by post-conviction attack rather than by direct appeal. State ex rel Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Colvin, 452 So.2d 1214 (La.App. 2d Cir.1984), writ denied 457 So.2d 1199 (La.1984). The reason for this rule is to provide for a full evidentiary hearing on the allegations of ineffective assistance. State v. Barnes, 365 So.2d 1282 (La.1978). An exception to the rule, however, is the situation where the record fully discloses the evidence necessary to decide the issue and the interest *929 of judicial economy warrant consideration on direct appeal. State v. Ratcliff, 416 So.2d 528 (La.1982).
A defendant's claim of ineffective assistance of counsel must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, the defendant must show that counsel's performance was deficient. This requires a specific showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. A defendant's claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment in light of the circumstances of the particular case. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. The showing must be such that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Strickland v. Washington, supra.
During defendant's trial, defense counsel made opening and closing statements on behalf of the accused, cross-examined the key state witnesses, and elicited testimony on direct examination from witnesses called to testify for the defense. The defense strategy was obviously to convince the jury through the testimony of Ms. Clay and defendant that the drugs did not belong to him and that he was unaware of their existence. Although defense counsel did not file pre-trial motions and did not object to certain testimonial and physical evidence, we cannot say in light of this record that the identified acts or omissions were outside the wide range of professional competent assistance.
This court does not act as a factfinder. We ought not decide the issue of ineffective assistance of counsel solely on the basis of argument and a record that is silent as to all the circumstances that existed at the time. We are admonished by Strickland and our own Supreme Court to assess an attorney's performance by reconstructing the circumstances of the challenged conduct and evaluating that conduct from counsel's perspective under the circumstances at the time. We must make every effort to eliminate the distorting effects of hindsight. In doing so, reasonable explanations may surface for what might seem to be ineffectiveness. See Strickland v. Washington, supra; State v. Clark, 492 So.2d 862 (La.1986).
The issue of ineffective assistance, in our opinion, cannot properly be determined on this appeal from this record. Defendant's remedy is through post-conviction relief in the trial court where the quality of the attorney's assistance can be fully developed and explored. State v. Prudholm, 446 So.2d 729 (La.1984).
These assignments do not warrant reversal.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant contends the evidence adduced at trial was insufficient to convict him of the crime with which he was charged. Specifically, he argues that the state failed to prove the elements of "possession" and "intent to distribute" both of which are essential to the crime of possession of cocaine with the intent to distribute.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which was adopted by the Louisiana *930 Legislature in LSA-C.Cr.P. art. 821. The appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Captville, 448 So.2d 676 (La.1984).
The circumstantial evidence rule of LSA-R.S. 15:438[6] does not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, but it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Chism, 436 So.2d 464 (La.1983).
One need not actually possess the controlled dangerous substance to violate the prohibition against possession. Constructive possession is sufficient. A person may be in constructive possession of a drug even though it is not in his physical custody if it is subject to his dominion and control. State v. Sweeney, 443 So.2d 522 (La.1983). Also, a person may be deemed to be in joint possession if he willfully and knowingly shares with a companion the right to control it. State v. Trahan, 425 So.2d 1222 (La.1983).
Although specific intent may be proven by direct evidence, such as statements of the defendant, it need not be proven as a fact but may be viewed from the circumstances of the incident and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981); State v. Ruple, 426 So.2d 249 (La.App. 1st Cir.1983).
The evidence most favorable to the state establishes that agents Holley and Miller heard the confidential informant make a purchase from a male individual identified as "Fuzzy"; Miller knew defendant prior to the incident and knew he went by the nickname of "Fuzzy"; only minutes after the police heard the transaction completed they entered the hotel room, found Ms. Clay and the confidential informant in the main portion and found defendant in the bathroom with $1700 in his hand; included in the $1700 was the marked money; there were seven $50 tinfoil packets of cocaine in plain view in the bathroom with other drugs and drug paraphernalia; two other like packets of cocaine were found in the main portion of the hotel room; the cocaine was packaged as it is commonly sold on the street; one of the packets of cocaine was located where the confidential informant was told to place any she purchased; there was a loaded pistol on the floor beside the commode where defendant was seated; men's clothing was found in the room; there was a notebook with loose cocaine on it in the bathroom with a notation in the notebook to the effect that "this notebook belongs to Fuzzy O'Neal"; Lorean Clay's probation officer testified that Ms. Clay told him that two months prior to her arrest she moved into the Castle Hotel with Elmer O'Neal so that she could have a steady supply of drugs, that O'Neal was the source of these drugs and that drugs were being transported in and out of the apartment.
The jury obviously rejected the testimony of defendant that he did not know about or see the drugs, drug paraphernalia, or gun, that he had won the money gambling, and that he was only present for the purpose of having sexual relations with Lorean Clay, an admitted prostitute. Likewise, the jury obviously rejected Ms. Clay's testimony *931 that the drugs belonged to her and the men's clothing to a truck driver friend whose whereabouts she did not know. The rejection of Ms. Clay's testimony was not unreasonable in light of her prior inconsistent statements, the prior resolution of her criminal charges and her professed love for the defendant. Such rejection of the testimony of defendant and of Ms. Clay would be reasonable and within the jury's province. The jury may weigh and accept or reject in whole or in part, the testimony of any witness. State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. McFadden, 476 So.2d 413 (La.App. 2d Cir.1985), writ denied 480 So.2d 739 (La.1986).
Viewing the evidence detailed above in the light most favorable to the prosecution while at the same time observing the circumstantial evidence rule of 15:438, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant actually or constructively possessed cocaine with the intent to distribute it. Compare State v. Sweeney, supra.
This assignment of error does not warrant reversal.
For the reasons expressed, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Two assignments of error pertaining to excessive sentence were not briefed nor argued. Assignments of error neither briefed nor argued are deemed abandoned. URCA-Rule 2-12.4. State v. Phillips, 337 So.2d 1157 (La.1976).
[2] Holley testified that he gave the confidential informant two $5 bills, two $10 bills and one $20 bill. The serial numbers of these bills were then recorded by him.
[3] Holley testified that he checked the wad of money and found the bills from which he had recorded the serial numbers. The money was returned to the safe at police headquarters to be used in other narcotics purchases. He stated the original paper on which he initially recorded the serial numbers was destroyed after the information concerning the surveillance and arrest was dictated into his report.
[4] Agent Holley testified that many times the edge of a playing card is used like a razor blade to line up the cocaine in small straight lines so that it can be snorted through the nose with a straw or a pen tube.
[5] State v. Prieur, 277 So.2d 126 (La.1973).
[6] LSA-R.S. 15:438 provides:

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.